UNITED STATES of America,
Plaintiff–Appellee,

v.

Oscar MEZA–SORIA,
Defendant–Appellant.

No. 90–10417.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1991.

Decided June 4, 1991.

Bram L. Jacobson, Asst. Fed. Public Defender, Phoenix, Ariz., for defendant-appellant.

Linda C. Boone, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before FARRIS, BOOCHEVER and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Oscar Meza–Soria (Meza–Soria) was indicted for violating 8 U.S.C. § 1326 by being an alien who reentered the country after having been deported. His first trial ended in a mistrial, which was granted over his opposition. When the government sought to retry him, he moved to dismiss on double jeopardy grounds. He asserted that the grant of the mistrial was based on the district court's erroneous view of the law, and that, as a result, no further prosecution was permissible. The district court denied his motion and he appealed. We reverse.

## BACKGROUND

Meza–Soria entered the United States on March 20, 1990. He was arrested at the port of entry because he had previously been deported, and, as it appeared, had not applied for reentry to this country.

This prosecution under 8 U.S.C. § 1326 followed, and his first trial commenced on July 10, 1990. After the jury was sworn and the government had put on its case in chief, Meza–Soria began the defense. That defense was based upon his claim that he was not an alien. The government objected to that line of defense, but the district court admitted evidence from Meza–Soria's father which tended to show that Meza–Soria was a United States citizen rather than an alien.

Thereafter, the district court determined that evidence regarding citizenship should not have been admitted, because the prior deportation proceedings had established Meza–Soria's alienage and that issue could not be explored in the criminal proceeding. Having reached that conclusion, the district court then decided that the prior admission of evidence of citizenship and the other proceedings on that point that had occurred before the jury would result in such prejudice to the government that a mistrial must be granted. The court then granted a mistrial over Meza–Soria's objection.

A new trial date was set, and on August 14, 1990, Meza–Soria's motion to dismiss the prosecution on double jeopardy grounds was denied. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

We review the district court's denial of a motion to dismiss an indictment on double jeopardy grounds de novo. *United States v. Bates*, 917 F.2d 388, 392 (9th Cir.1990). Similarly, we review issues of statutory construction de novo. *United*

*States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

While this case comes before us in the posture of a double jeopardy question, it truly presents issues involving statutory construction, and procedural rights of defendants which are mandated by the Constitution. More particularly, in resolving this case we must address the following issues: what is the proper construction of 8 U.S.C. § 1326; and is a defendant collaterally estopped or otherwise precluded from contesting each element of the offense in this kind of prosecution. If we determine that the district court erred in its resolution of those issues, as we do, we must then decide whether any further prosecution is permitted.

### A. *The Grant of the Mistrial.*

(1) Statutory Construction.

The statute under which Meza–Soria was charged reads as follows, in pertinent part:

Any alien who—

(1) has been arrested and deported or excluded and deported and thereafter (2) enters, attempts to enter, or is at any time found in, the United States
...

shall be guilty of a felony....

8 U.S.C. § 1326.

The elements of this crime are straightforward, so this is a case where our quest for meaning begins and ends "with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The elements are: (1) the defendant is an alien; (2) he was arrested and deported or excluded and deported; and (3) thereafter, he improperly entered, or attempted to enter, the United States. In the case at hand there is no real dispute about the last two elements, so our initial focus

will be on the first element, alienage and its proof.

■ We first note that there is little reason to think that the word "alien" means anything different from what it says. If the statute were meant to apply to those individuals who are not aliens, it could easily have been drafted that way. For example, Congress could have used the more general terminology of "any person," or "whoever." *See, e.g.,* 18 U.S.C. § 207 and 18 U.S.C. § 471. Its failure to do so emphasizes that alienage itself must be shown.

The legislative history of the provision is sparse [1] at best, and nothing we have found indicates that "alien" should be taken to mean persons in general. In any event, the statute is so clear in this respect that there seems to be little need to search for legislative history, for if we did find some other construction of the word buried in that history, use of the construction would surely implicate basic principles of legality. *See, e.g.,* L. Fuller, *The Morality of Law,* 33–41 (Yale U.Press 1964). At the very least, we would have to consider the doctrine of lenity. *See, e.g., Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955) and *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). Moreover, in *United States v. Bejar–Matrecios,* 618 F.2d 81, 83 (9th Cir.1980) we indicated that proof of alienage is required in a case such as this.

If alienage is an element of the crime, it would seem to follow that a defendant is entitled to contest the issue by demonstrating that he is not an alien. At first blush, nothing seems more obvious. That is just what Meza–Soria attempted here.

However, the government argued that Meza–Soria was, in effect, collaterally estopped from contesting his alienage, since he had of necessity been determined to be an alien in the prior deportation proceedings. We turn now to that contention.

---

**1.** *See United States v. Mendoza–Lopez,* 481 U.S. 828, 835, 107 S.Ct. 2148, 2153, 95 L.Ed.2d 772 (1987).

**(2) Collateral Estoppel.**

■ If, as we have stated, alienage is an element of the crime, then it is an ineluctable conclusion that the government must prove that element beyond a reasonable doubt—due process demands no less. *See Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989), and *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970).

That, of course, does not mean that facts necessary to convict cannot be indisputably established by the doctrine of collateral estoppel. As we said in *Bejar–Metrecios*, 618 F.2d at 83, "[u]nder the collateral estoppel doctrine, where a question of fact essential to the judgment is actually litigated and determined by a valid judgment, the determination is conclusive between the same parties in a subsequent action." It is important to note, however, that in *Bejar–Metrecios*, the government sought to collaterally estop the defendant by using a judgment from another criminal case. Despite confrontation and jury trial implications, that makes a good deal of sense, for in the prior case the facts were found to be true beyond a reasonable doubt.

Here the situation is quite different. Here the prior determination was not made in a criminal proceeding, it was made in a deportation hearing, which is a civil proceeding. That itself would not be conclusive if the burden of proof borne by the government in that proceeding were the same as the burden in a criminal proceeding. It is not the same. Rather, as we have pointed out, in a deportation proceeding "the government must *first* present 'clear, convincing, and unequivocal' evidence of foreign birth." *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1308 n. 2 (9th Cir.1984) (citing *Woodby v. Immigration Service*, 385 U.S. 276, 284–86, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966)). We also noted that a presumption against the person was then created and the burden of proof shifted to that person.

Again, it is apparent that the "clear and convincing" burden is not the same as proof beyond a reasonable doubt. The Supreme Court made that explicit in *Santosky v. Kramer*, 455 U.S. 745, 755–57, 102 S.Ct. 1388, 1395–96, 71 L.Ed.2d 599 (1982). There, after discussing the preponderance of the evidence and beyond a reasonable doubt standards, the Court referred to the clear and convincing standard as "an intermediate standard of proof...." *Id.* at 756, 102 S.Ct. at 1396.

It is true that on occasion individual justices of the Supreme Court have said that the clear and convincing burden is substantially identical to proof beyond a reasonable doubt, but that view has never commanded a majority of the Court. *See Kungys v. United States*, 485 U.S. 759, 792–95, 108 S.Ct. 1537, 1557–59, 99 L.Ed.2d 839 (1988) (Stevens, J., concurring), and *Klapprott v. United States*, 335 U.S. 601, 612–13, 69 S.Ct. 384, 389, 93 L.Ed. 1099 (1949) (Black, J., dissenting). In fact, it is highly unlikely that the Court would allow facts in a criminal case to be proved upon a mere clear and convincing evidence standard. *Cf., Winship*, 397 U.S. at 364, 90 S.Ct. at 1073.

This difference in burdens of proof alone should demonstrate that it would be quite improper to establish the alienage element of the reentry offense through the use of factual findings in the deportation hearing. One might as well collaterally estop a defendant by using facts determined in any other civil proceeding. That would be a rather surprising proposition; one which is decidedly bereft of legal support. Notably, the courts have made it quite clear that "[b]ecause different standards of proof are involved, acquittal in [a] criminal action does not bar a civil suit based on the same facts." 2 C. Wright, Federal Practice & Procedure § 468 at 667 (1982). *See Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 672–73, 107 L.Ed.2d 708 (1990); *Helvering v. Mitchell*, 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938). By parity of reasoning, the difference in standards of proof must preclude the use of civil proceeding findings to establish facts in a criminal case. *See, e.g., United States v. Konovsky*, 202 F.2d 721, 726–27 (7th Cir.1953); Restatement (Second) of Judgments § 28(4); 18 C. Wright, A. Miller & E.

Cooper, Federal Practice & Procedure § 4422 at 214–15 (1981). *See also Patterson v. Municipal Court*, 232 Cal.App.2d 289, 302–04, 42 Cal.Rptr. 769, 775–76 (1965); *People v. Kovacevich*, 19 Cal. App.2d 335, 338, 65 P.2d 807 (1937).

The government, however, relies heavily upon *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) for the proposition that the civil deportation proceeding findings against Meza–Soria precluded him from contesting alienage in this case. The district court agreed with that characterization of *Mendoza–Lopez*, and in so doing it erred.

In *Mendoza–Lopez*, the Court did discuss the effect of a deportation order on criminal prosecutions under 8 U.S.C. § 1326, but there the true similarity between this case and that one ends. *Mendoza–Lopez* involved an attack on the deportation order itself on grounds that the order was obtained at a hearing that was fundamentally unfair. In other words, the defendants in that case sought to negate the second element of the offense—the deportation—when they argued that the deportation order could be attacked in the criminal proceeding. The Court phrased the issue before it as, "whether the validity of an underlying order of deportation may be challenged in a criminal prosecution in which that prior deportation is an element of the crime." 481 U.S. at 833, 107 S.Ct. at 2152. The Court answered in the affirmative, at least for cases where judicial review of the administrative proceedings had been precluded.

The government also relies on our section 1326 cases, but they, too, have addressed and permitted attacks on the deportation element of the offense, although upon bases different from denial of review. *See, e.g., United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989); *United States v. Nicholas–Armenta*, 763 F.2d 1089 (9th Cir.1985); *United States v. Rangel–Gonzales*, 617 F.2d 529 (9th Cir.1980); *United States v. Calderon–Medina*, 591 F.2d 529 (9th Cir.1979); and *United States v. Barraza–Leon*, 575 F.2d 218 (9th Cir.1978).

Thus, the most that *Mendoza–Lopez* and our cases establish is that a person may only attack the fact of deportation in certain limited circumstances. The rule we establish today is that the facts decided in arriving at the deportation order are not conclusive proof of alienage in the criminal proceeding. There is no antinomy here. The rules can abide with one another without friction, for they, purely and simply, deal with entirely different issues.

This does not mean that we are extending the ability of defendants to collaterally attack deportation orders. All we hold is that deportation orders do not establish the alienage element in later criminal prosecutions. As we have already pointed out, the earlier determination of alienage in a deportation action is in no way affected by a later failure of proof in a criminal case.

In short, Meza–Soria was entitled to put the government to its proof on the issue of alienage, and was entitled to defend himself by seeking to prove that he was not an alien. Thus, there was no justification for the district court's declaration of a mistrial on the ground that Meza–Soria's contest of the claim that he was an alien came to the attention of the jury through evidence and other comments.

B. *Double Jeopardy.*

█ The double jeopardy clause of the fifth amendment to the United States Constitution generally entitles a criminal defendant to have his trial completed by the jury which is first impaneled to hear it. *See United States v. Bates*, 917 F.2d 388, 392 (9th Cir.1990); *United States v. Sanders*, 591 F.2d 1293, 1296 (9th Cir.1979). That is a valued right, but, "[a]t times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so." *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).

On the other hand, where a mistrial is granted over the objections of the defendant, the government must show that there was a manifest necessity so to do. *Ari-*

zona v. Washington, 434 U.S. 497, 505–06, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978). Improper activities by the defense may generate sufficient prejudice to taint the jury and support the grant of a mistrial. *Id.* at 514–16, 98 S.Ct. at 834–36. Moreover, "a trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference...." *Id.* at 514, 98 S.Ct. at 834–35.

However, not just any reason for granting the mistrial will do, for the trial judge must exercise a sound discretion if the defendant's "valued right" is to be properly protected. *Sanders,* 591 F.2d at 1297. Moreover, even a good faith decision by the trial judge will not necessarily insulate the mistrial decision from appellate review and obviate a determination that the defendant's double jeopardy right has been violated. Even if the trial judge believes in subjective good faith that a mistrial is called for, we must reverse if the record belies his concerns. *Id.* at 1298–99.

 Here the district court, in perfect good faith, decided that a mistrial was necessitated because evidence that defendant was a citizen of the United States had come before the jury. The law belies that concern. In fact, as we have shown, Meza–Soria was entitled to place that evidence before the jury. Thus, there was no good legal reason whatever to grant the mistrial, and that absence of a reason makes the grant an abuse of discretion.[2] It follows that a further trial would violate Meza–Soria's right to be free from double jeopardy.

## CONCLUSION

When a person is charged with the felony of being an alien who has reentered the United States after being deported, the government must prove alienage beyond a reasonable doubt. The person is entitled to contest the government's evidence by submitting his own evidence of citizenship. That is precisely what Meza–Soria tried to do, but when he did so he was met with a mistrial.

---

**2.** Given this holding, we need not decide whether the grant of the mistrial would have been

We hold that it was improper to declare a mistrial and that Meza–Soria's right to be free from further prosecution would be offended if a new trial were permitted. Thus, the motion for dismissal should have been granted.

REVERSED, and remanded for dismissal of the indictment with prejudice.

proper if the evidence of citizenship were properly excludable.